WEINBERGEN and another, Respondents, vs. BARTELS, imp.,
Appellant.

*March 9—April 5, 1927.*

*Bills and notes: Presentment and notice of nonpayment: Waiver
by parol agreement: By requesting extension of time of pay-
ment.*

1. Presentment of a note for payment and notice of nonpayment
   may be waived orally by the indorser at the time the indorse-
   ment is made, and such waiver may be established by oral
   testimony. p. 543.
2. A finding of the court, amply supported by the evidence, that
   after the note became due the indorser requested an extension
   of time for payment, is sufficient to show a waiver of pre-
   sentment for payment and notice of nonpayment. p. 544.

APPEAL from a judgment of the circuit court for La-
fayette county: S. E. SMALLEY, Circuit Judge. *Affirmed.*

This is an action to foreclose a mortgage for $16,000,
executed February 28, 1920, on 160 acres of land in said
county, to secure a note of like amount and of the same date,
payable to the defendant *Bartels* five years after date, with
interest at the rate of five per cent. per annum, payable semi-
annually.

In November, 1919, the plaintiffs, the owners of a farm
of about 240 acres, sold the same to the defendant *Bartels.*
*Bartels,* in June of the same year, had sold a farm belonging
to him to one Clarence Roy, and the latter, together with his
wife, agreed to execute and deliver to *Bartels,* as a part con-
sideration for said sale, a promissory note for the sum of
$16,000, secured by a purchase-money mortgage upon the
land. It was agreed between the plaintiffs and the defendant
*Bartels,* at the time the latter purchased plaintiffs' farm, that
the aforesaid mortgage executed by Roy, or Roy and others,
would be assigned to the plaintiffs as part consideration for
the sale of plaintiffs' farm to the defendant *Bartels.*

McConnell & Wilson were real-estate agents at Darlington and had negotiated the contract from *Bartels* to Roy. On the 1st day of March, 1920, the plaintiffs and the defendant *Bartels* met at the office of Kopp & Brunckhorst, attorneys at Platteville, to execute the contract of date of November 28, 1919, between the plaintiffs and the defendant *Bartels,* but instead of offering to transfer the note and mortgage of Roy, or Roy and others, *Bartels* tendered a note and mortgage signed by the real-estate firm of McConnell & Wilson. The note so tendered was indorsed by *Bartels* without recourse. Plaintiffs immediately protested against this note and mortgage for the reason that they were not executed by the proper parties as agreed in the contract of November 28, 1919, and they threatened to cancel and annul the entire transaction. After further consideration of the matter the plaintiffs represented to the defendant *Bartels* that they would accept the note and mortgage upon condition that *Bartels* would be absolutely liable upon the note to the same extent as though he were the maker thereof, and upon the further condition that they, the plaintiffs, would be relieved from giving any notice whatsoever in order to fix the liability of *Bartels* as an indorser. It was further agreed that the words "without recourse" were to be scratched out, and that *Bartels* should evidence his consent thereto by signing his initials after the words "without recourse." The foregoing conditions insisted upon by the plaintiffs were thereupon apparently accepted by *Bartels,* and the words "without recourse" were stricken out, and annexed to the words stricken out *Bartels* affixed his initials, viz. "F. B." *Bartels* upon the trial denied that these initials were in his handwriting, but a comparison thereof with his admitted signatures clearly manifested that he wrote these initials.

The evidence also discloses that the transaction was thereupon closed, and that thereafter plaintiffs had no dealings whatever with the firm of McConnell & Wilson or

either of the members. Subsequent to this transaction both McConnell and Wilson died, and their estates were duly probated, and the plaintiffs filed no claim whatsoever against their estates.

It also appears that on a number of occasions before the maturity of the note, plaintiffs by notice in writing demanded from the defendant *Bartels* the payment of the interest due on the note and of the principal. While this note for $16,000 matured on March 1, 1925, and was made payable at the First National Bank of Darlington, it was not presented at the bank for payment upon the due date. A few days after the maturity of the note the plaintiffs and *Bartels* met in Platteville, and at this time plaintiffs made demand for the payment of the note, to which *Bartels* replied that he was unable to make payment at that time; that it would break him in business; and further stated that he would pay the note if he were given additional time. It was thereupon agreed by the plaintiffs that they would extend the note upon condition that the defendant *Bartels* and one Mrs. Wilson, who was then the owner of the land, would join with the plaintiffs in an extension agreement. The said firm of Kopp & Brunckhorst were then requested to prepare an extension agreement, which both the plaintiffs and the defendant *Bartels* signed. Mrs. Wilson, however, refused to join in the agreement.

A short time subsequent thereto this action of foreclosure was begun and prosecuted to final judgment. The judgment ordered by the court provided for a deficiency judgment against *Bartels*. From the judgment so entered the defendant *Bartels* has prosecuted this appeal.

For the appellant there was a brief by *Murphy & Murphy* of Platteville, and oral argument by *Mr. J. W. Murphy*.

For the respondents there was a brief by *Kopp & Brunckhorst* of Platteville, and oral argument by *Mr. A. W. Kopp*.

Doerfler, J.    The foregoing facts in substance were incorporated in the court's findings, and are supported by the great weight of the credible evidence in the case.

Whether Roy or others were financially responsible or not, under the contract dated November 28th the plaintiffs had agreed to accept his or their note, and not the note of McConnell & Wilson or of any other person or persons. The plaintiffs, therefore, came prepared and had a *bona fide* intention to carry out the contract in accordance with its terms, and it was the defendant *Bartels* who appeared upon the scene and attempted to substitute the personal liability of McConnell & Wilson in place of Roy and of Roy and others. It is a common experience in business transactions that notwithstanding a debtor may secure his indebtedness by means of collateral security, the creditor places more reliance upon the individual responsibility of the debtor than upon the security furnished, and in such cases the collateral constitutes merely additional security. That the plaintiffs relied largely upon the personal responsibility of Roy or Roy and others is made manifest by the terms of the agreement, pursuant to which Roy or Roy and others were to be the makers of the note. Under such circumstances it is not surprising that the plaintiffs were highly exasperated when an attempt was made by *Bartels* to substitute the personal responsibility of McConnell & Wilson in place of Roy or Roy and others. In fact, so great was their disappointment by the attempted breach of the contract on the part of *Bartels* that they were ready to cancel the entire transaction.

*Bartels* fully realized the gravity of the situation. He had contracted to purchase the valuable farm of the plaintiffs, consisting of 240 acres, at a price and with terms and conditions entirely satisfactory to him. When the contract was made, farm lands quite generally had reached the peak prices, and there was no indication then apparent of a break in

values.   He was not dispos;d to relinquish his rights under the contract.   He realized that he was in a position then where of necessity he must either accede to the plaintiffs' request or lose the benefits of his bargain. , The plaintiffs, having negotiated the sale of their 240-acre farm to the defendant *Bartels,* however were satisfied with the financial responsibility of *Bartels.*   Therefore it occurred to them that if the personal responsibility of *Bartels* were substituted in place of that of Roy or Roy and others, the transaction might safely be concluded.   Under these circumstances the right to impose and insist upon new terms as a modification of the original contract rested mainly in the plaintiffs, and they exercised such right, and such terms were consented to by *Bartels.*

An issue, therefore, of law is squarely presented, whether presentment for payment and of notice of nonpayment may be waived orally by the indorser at the time the indorsement is made, and whether such waiver can be established by oral testimony. . This issue was squarely presented to this court in an early case (*Worden v. Mitchell,* 7 Wis. 161), and in the opinion of the court was decided adversely to the contention here made by counsel for the defendant *Bartels.* The ruling in the *Worden Case* has never been overruled by this court, as far as we are able to determine; on the contrary, it was substantially affirmed in principle in the case of *Waterproof P. & B. Co. v. Van Buren,* 182 Wis. 640, 197 N. W. 338.

While there appears to be an irreconcilable conflict in the authorities outside of Wisconsin upon this proposition, it is also apparent that "the trend of modern decision and legislation is in favor of the doctrine that a waiver of presentment at the time of the indorsement may be proved by parol evidence.   Indeed, it seems that the duty of demand and notice in order to hold an indorser *is not a part of the contract, but*

*a step in the legal remedy, that may be waived at any time."*
3 Ruling Case Law, 1185, and cases cited in note. (Italics
ours.)

In 8 Corp. Jur. p. 698, § 980, it is said:

"The time at which a waiver is made is immaterial. It
may be made at the time the note is executed; at the time of
indorsement; before, at, or after maturity; or even after
commencement of a suit thereon; or after judgment and
pending notice for a new trial."

In 8 Corp. Jur. p. 696, §§ 976 and 977, it is said: "The
right of any party to a demand or notice, being a condition
for his benefit, may be waived by him."

The trial court also held in its opinion: "That after the
note became due the defendant requested the plaintiffs to
extend the time for payment, which request amounted to a
waiver of presentment for payment and notice of nonpay-
ment." The evidence amply supports this conclusion of the
trial court, which was substantially incorporated in its find-
ings. See the following cases, cited in plaintiffs' brief:
*Parson v. Dickinson,* 23 Mich. 56; *Belch v. Roberts,* 191
Mo. App. 243, 177 S. W. 1062; *Farmers & Merchants State
Bank v. H. E. Behrens Mfg. Co.* 50 N. Dak. 850, 198
N. W. 467; *Farmers & Merchants' Nat. Bank v. Brown,* 131
S. C. 265, 127 S. E. 365; *Engle v. Shepherd,* 100 Okla. 200,
229 Pac. 208; *Yaeger v. Farwell,* 13 Wall. (79 U. S.) 6;
*Sweetser v. Jordan,* 216 Mass. 350, 103 N. E. 905.

The judgment of the lower court must therefore be af-
firmed.

*By the Court.*—It is so ordered.